STARKE, Plaintiff-Respondent, v. VILLAGE OF PEWAUKEE, Defendant-Appellant.†

Supreme Court.

*No. 77–067. Argued September 5, 1978.—Decided October 3, 1978.*
(Also reported in 270 N.W.2d 219.)

† Motion for reconsideration denied, with costs, on November 28, 1978.

276

For the appellant there were briefs and oral argument by *August E. Fabyan,* village attorney, of Hartland.

For the respondent there was a brief by *Willis B. Swartwout, III, Gary L. Heiber* and *Swartwout & Heiber* of New Berlin, and oral argument by *Willis B. Swartwout, III.*

COFFEY, J.  There are 4 issues on appeal.

1. Does a reserve circuit judge temporarily assigned because of the illness of the presiding judge have the authority to review or modify a judgment entered prior to the reserve judge's specific assignment to the particular case?

2. Assuming that the reserve circuit judge had authority to act under the above circumstances, did he properly exercise his discretion in modifying the judgment in this case?

3. If the reserve circuit judge should not have modified the judgment, should the original judgment entered by Judge Gramling be reviewed and affirmed?

4. Is the plaintiff-respondent entitled to back pay from November 29, 1976 to the date of his resignation on July 6, 1978 if the Village Board did not have the power and authority to discharge the respondent?

The appellant village has filed a motion to dismiss based upon the mootness of the issues presented in this case. It should be noted that the granting of a motion to dismiss essentially constitutes an affirmance of the trial court's decision from which the appeal is brought.

"The dismissal of an appeal or error proceeding, as a general rule, vacates the proceeding and leaves the decree of the subordinate court in full force. Dismissal has been said to amount, in effect, to an affirmance. The trial judgment is left undisturbed and may be regarded as res judicata." 5 Am. Jur.2d, *Appeal and Error,* sec. 390, p. 345.

Given that the granting of a motion to dismiss would in effect result in affirmance of Judge Raskin's order, a discussion of the issues and merits of this case is inextricably bound to the court's consideration of the motion to dismiss.

The appellant contends that the reserve judge assigned to a case because of the present incapacitation of the presiding judge exceeds his authority in reviewing or modifying a decision or judgment previously rendered by the presiding judge. We do not agree with the appellant's contention.

Judge Raskin was assigned to this case by specific assignment from Chief Justice Beilfuss on May 23, 1977 in the following language:

"It appearing that a judge should be assigned to act in the above entitled matter under Secs. 251.82 and 252.-075 because of the inability of the Hon. William Gramling to act due to illness.

"IT IS ORDERED that the Hon. Max Raskin be assigned to act in the above entitled matter in the 22nd Judicial Circuit Branch 1."

Sec. 252.075, Stats. (1975), renumbered 753.075 by the Laws of 1977, ch. 187, sec. 92, effective August 1, 1978, is controlling as to the powers of a reserve judge serving in a circuit court by assignment of the Supreme Court. The statute reads:

"(1) POWERS. Retired supreme court justices and retired circuit judges serving temporarily as circuit or county judges at the request of the chief justice of the supreme court may exercise all jurisdiction of the circuit or county court in which they serve."

The assignment by Chief Justice Beilfuss pursuant to sec. 252.075(1), Stats. (1975), makes it clear that as of May 23, 1977 Judge Raskin in his disposition of this case possessed all of the powers that would have been

held by Judge Gramling, but for his illness and the ensuing assignment order.

The analysis of this case requires preliminary consideration be given to the question of whether as of May 13, 1977 did a judgment in fact exist? Whether or not a judgment existed on May 13, 1977 is important in two respects. The first, if a judgment existed on May 13, 1977, by what authority did Judge Raskin modify the judgment? Second, if Judge Raskin's order is vacated or reversed, can Judge Gramling's order be affirmed?

On May 5, 1977 the respondent filed with the Waukesha Circuit Court a motion for reconsideration of Judge Gramling's decision of December 23, 1976. Judge Raskin, sitting as Branch I of the Waukesha Circuit Court on a general assignment, scheduled a motion for hearing on May 16, 1977. The record does not indicate by what authority Judge Raskin was sitting prior to the specific assignment to this case on May 23, 1977, but this court takes judicial notice of its own records and proceedings.[1]

Since Judge Raskin was serving on May 5, 1977 by virtue of a general appointment from the supreme court, his powers were those enumerated in the previously recited statute, sec. 252.075 (1), Stats. (1975). Possessing all of the powers of the circuit court, Judge Raskin, on May 5, 1977, had the authority to schedule the motion. The crucial question must be asked: "What powers does a presiding judge retain while a reserve judge is sitting by assignment to that court. Neither statutory nor case law shed any light upon this problem. Does a presiding

[1] Judge Edwin Wilke, Administrative Director of Courts, has on record a general assignment of Judge Raskin to the 22nd Judicial Circuit, Branch I, due to illness of Judge Gramling. Assignment #A–5875, dated 4/18/77 for the period of May 2, 1977, through May 31, 1977.

judge retain all the court's powers and jurisdiction while a reserve judge is sitting by assignment; if so, Judge Gramling was empowered to sign the judgment order on May 13, 1977 and a valid judgment existed as of that date. It is the law of Wisconsin that a judgment signed while motions are pending is a mere irregularity and does not render the judgment void.[2] But if a presiding judge does not retain the powers of the court while a reserve judge is sitting in temporary replacement, Judge Gramling would not have had the authority to sign the judgment and the judgment order of May 13, 1977 would be void.

We find that sec. 252.075 (1), Stats. (1975), and its renumbered counterpart sec. 753.075, Stats., do not affect a presiding judge's powers and jurisdiction. Therefore, Judge Gramling had the authority to sign the judgment on May 13, 1977 despite the assignment to Judge Raskin.

The factual and legal parameters of this case must be clearly defined. This case presents a question of conflicting judicial authority within a single circuit court branch. The conflict of judicial authority was created when two judicial officers were exercising concurrent judicial power over the same circuit branch. The creation of these separate spheres of judicial influence was precipitated by a temporarily disabling illness to the presiding judge and a general assignment of a reserve judge to that circuit branch. Therefore, this case is unlike *Alexander v. Sloan,* 73 Wis.2d 145, 242 N.W.2d 904 (1976), wherein this court admonished a litigant's post order "forum shopping" between presiding judges and separate branches of the same circuit; such action be-

---

[2] *Egan v. Sengfeil,* 46 Wis. 803, 1 N.W. 467 (1879); *Williams v. Hayes,* 68 Wis. 248, 32 N.W. 44 (1887); *Davison v. Brown,* 93 Wis. 85, 67 N.W. 42 (1896).

ing taken without a showing as to the unavailability of the original presiding judge. *Supra* at 149.

As noted, concurrent spheres of judicial power existing between a presiding judge and an assigned reserve judge precipitate the problem arising in this case. Certainly, concurrent spheres of judicial authority in the same branch of a court do not promote the orderly administration of judicial proceedings. Thus, a discussion of applicable case law history is relevant.

In *Harrigan v. Gilchrist*, 121 Wis. 127, 99 N.W. 909 (1904), a somewhat similar situation was dealt with by the supreme court. Receivership proceedings were begun in 1893 and were not completed prior to the expiration of the trial judge's term of office on January 1, 1898. On the day before leaving office, the trial judge made his order which was subsequently set aside by the successor judge. The court said regarding a challenge made against the successor's authority to act:

"The judge of the court at the time the order of December 30th was vacated, had the same authority to take such action as his predecessor would have had, if the latter's term of office had continued to the time thereof. . . . True, though a judge who comes into power, as here, possesses authority, in a sense, to review decisions of his predecessor, as under the circumstances of this case, such authority should be exercised with great care." *Supra* at 428.

The preceding was reiterated at page 430, the court commenting:

"So while we fully recognize the rule contended for by appellant's counsel, it is not one creating an absolute disability of a judge to set aside an order made by his predecessor, where the latter, if in office, might do it."

The distinction between a successor judge granted his own term by the electorate and in this instance, a re-

serve judge serving by a specific case appointment of the supreme court, is of minimal significance in light of the powers granted to a reserve judge under then sec. 252.-075, Stats. (1975).

The question of the authority of a successor judge to rule upon matters pending before the presiding judge was reviewed in *State ex rel. Pardeeville Electric Light Co. v. Sachtjen,* 245 Wis. 26, 13 N.W.2d 538 (1944). Judge Sachtjen was appointed to fill the vacancy created by the trial judge's death. Prior to his death the trial judge had heard testimony on the plaintiff's challenge to the validity of an acquisition order issued by the public service commission. The transcript of the testimony was remanded to the commission for a report following reconsideration of the testimony. The trial judge died before having heard oral arguments or taken any steps towards a decision. Judge Sachtjen's authority to continue with the case based upon the existing transcript was affirmed by this court. Relying on the authority of *Harrigan v. Gilchrist, supra,* the court stated:

". . . and when a new judge is appointed and qualifies, he is clothed with all powers and jurisdiction possessed by his predecessor." 121 Wis. at 32.

The Sachtjen rule was modified to some extent in *Cram v. Bach,* 1 Wis.2d 378, 88 N.W.2d 877 (1957). The court held that a successor judge cannot overrule a predecessor judge on a motion for new trial based upon newly discovered evidence when it requires a successor to review testimony not given in front of him. The holding is elucidated at page 383:

"A successor judge may complete any acts uncompleted by his predecessor where they do not require the successor to compare and weigh testimony. 48 C.J.S., Judges, pp. 1018, 1019, sec. 56a. Of course, if the facts are stipulated or uncontroverted, the successor judge is entitled to base findings thereon."

The Wisconsin rule emanating from the aforementioned cases[3] is that a successor judge may in the exercise of due care modify or reverse decisions, judgments or rulings of his predecessor if this does not require a weighing of testimony given before the predecessor and so long as the predecessor would have been empowered to make such modifications. The underlying rationale of the aforementioned cases is that the power to modify a judicial ruling resides in the court and not in the person of the individual judge, who is merely the personification of the powers of the court.[4] It should be pointed out that the facts in this case conform to this court's previous decisions. The facts in the certiorari proceedings were stipulated; consequently Judge Gramling heard no testimony. Thus, the modification of the order by Judge Raskin is consistent with the case law recited herein.

The aforementioned cases formulate a sound rule as it applies to a successor judge dealing with pending litigation. As earlier noted, 252.075, present sec. 753.075 (1), Stats., in giving a reserve judge all the powers of a circuit judge minimizes the legal effect of a distinction between a successor judge and a reserve judge. Thus, we apply the successor judge rule to this case noting that there are jurisdictional rules applying to the reserve judge when dealing with pending litigation in the circuit branch. We hold that when a reserve judge has been as-

[3] *Harrigan v. Gilchrist, supra; State ex rel. Pardeeville Electric Light Co. v. Sachtjen, supra; Cram v. Bach, supra,* see also *Lanphere v. State,* 114 Wis. 193, 89 N.W. 128 (1902); *Pengalow v. State,* 20 Wis. 61 (1865) and 11 ALR2d 1117, *Power of Successor Judge Taking Office During Termtime to Vacate, etc. Judgment Entered by his Predecessor.*

[4] See also 4 ALR2d 584, *Requiring Successor Judge to Journalize Finding or Decision of Predecessor* at 585.

signed due to the absence or illness of the presiding judge pursuant to an assignment from the chief administrative judge of the judicial district or the chief justice of the supreme court, that assigned judge alone shall be vested with the full authority and jurisdiction to act for the court until the assignment has been rescinded by the original appointing authority, whether it be the chief administrative judge of the judicial district or the chief justice. Such authority shall be exercised by the assigned judge within the framework of rules and decisions promulgated by this court for the orderly administration of justice. We believe a reserve judge sitting in a circuit court by general assignment wherein the return of the presiding judge is readily determinable or expected should refrain in all cases whenever possible from revoking or modifying a previous judgment or order issued by the court except wherein a substantial right would be lost if not acted upon in a timely fashion due to a mistake or error in the previous judgment or order issued. We do not rescind or modify the previous case law that recites a temporarily assigned judge does not have the authority to modify or rescind any judgment or order of the prior decision where he is required to weigh or compare testimony not given before him.[5]

Thus, we conclude that the specific assignment of Judge Raskin on May 23, 1977 gave him all the powers of the presiding circuit court judge or successor judge. The question now becomes whether Judge Gramling, if presiding, would have been empowered to modify the May 13th judgment. The relief from judgment statute, sec. 806.07, Stats., empowers the court to relieve a party from a judgment or order prior to the taking of an appeal. The grounds which must be made

---

[5] *Cram v. Bach, supra* at 382 holds that where the predecessor-presiding judge cannot be expected to return to the bench that the successor must hear the matter *de novo*.

before such relief can be granted are listed in the statute:

"(1) On motion and upon such terms as are just, the court may relieve a party or legal representative from a judgment, order or stipulation for the following reasons;

"(a) Mistake, inadvertence, surprise, or excusable neglect;

"(b) Newly-discovered evidence which entitles a party to a new trial under s. 805.15 (3) ;

"(c) Fraud, misrepresentation, or other misconduct of an adverse party;

"(d) The judgment is void;

"(e) The judgment has been satisfied, released or discharged;

"(f) A prior judgment upon which the judgment is based has been reversed or otherwise vacated;

"(g) It is no longer equitable that the judgment should have prospective application; or

"(h) Any other reasons justifying relief from the operation of the judgment." Sec. 806.07, Stats.

A recent application of a trial court's power under sec. 806.07 is contained within *In Matter of Estate of Smith v. Smith,* 82 Wis.2d 667, 264 N.W.2d 239 (1978). The court noted the broad discretion which can be exercised by a trial judge under the "catch-all" provision of sec. 806.07 (1) (h). In *Smith,* there was found to be no abuse of discretion when the trial judge entertained a sec. 806.07 (1) (h) motion based upon the judge's recognition that he had erred in giving insufficient consideration to the evidence and the law. The court also affirmed on those grounds the vacating of the original judgment and conclusions of law, even though the judgment was supported by a sufficient quantum of evidence. *Smith* is applicable to this case in that it points out that a trial judge may use sec. 806.07 (1) (h) to give relief from a judgment where error in law or fact is recognized to exist.

The appellant has raised issue as to whether the motion for reconsideration interposed prior to judgment can be converted into a sec. 806.07 motion for relief from judgment, without a showing of the enumerated grounds therein. If the motion for reconsideration cannot be converted into a sec. 806.07 type motion, then there would be no statutory authority for a modification of the judgment.

We believe that there are grounds upon which the motion for reconsideration can be converted into a sec. 806.-07 type motion. *In the Matter of the Estate of Smith v. Smith, supra,* the court gave cognizance to the broad discretionary powers granted by sec. 806.07(1)(h) which permits a motion upon a showing of "any other reasons justifying relief from the operation of the judgment."[6] The respondent's motion for reconsideration alleged that Judge Gramling had erred as a matter of law and further that he had not addressed issues affecting the substantial rights of the respondent. The *Smith* case is ample authority for a judge under sec. 806.07(1)(h) to correct erroneous conclusions of law or to address issues not properly dealt with under the original judgment.

It does not strain legal logic to convert an unheard motion, filed and scheduled for a hearing prior to the signing of a judgment, into a sec. 806.07 motion to give relief from a judgment. An analogy to this situation is provided for under sec. 802.06(2), Stats., wherein certain motion defenses can be converted into a motion for

[6] See, Graczyk, *The New Wisconsin Rules of Civil Procedures,* Chs. 805–807, 59 Marq. L. Rev. 671, 727 (1976), where it was stated:

" 'The former rule limited the number of circumstances under which a motion to vacate a judgment could be sought. The new rule considerably expands this list, while subsection (1)(h) gives the court wide discretion to entertain the motion for other justifiable reasons.' "

summary judgment if matters outside the pleadings are presented and not excluded by the court.[7]

The above discussion leads to the conclusion that Judge Raskin did have the authority to modify the previously entered judgment of Judge Gramling. However, a motion to dismiss the appeal cannot be granted if it would result in the "affirmance" of a decision which is erroneous as a matter of law. A discussion of the merits of Judge Gramling's and Judge Raskin's decisions must be undertaken.

The certiorari action commenced on December 1, 1976 was based upon the respondent's position that the Village Board did not have the authority to review the decision

---

[7] "(2) HOW PRESENTED. Every defense, in law or fact, except the defense of improper venue, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or 3rd party claim shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may be at the option of the pleader be made by motion; (a) lack of capacity to sue or be sued, (b) lack of jurisdiction over the subject matter, (c) lack of jurisdiction over the person or res, (d) insufficiency of summons or process, (e) untimeliness or insufficiency of service of summons or process, (f) failure to state a claim upon which relief can be granted, (g) failure to join a party under s. 803.03, (h) res judicata, (i) statute of limitations, (j) another action pending between the same parties for the same cause. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. Objection to venue shall be made in accordance with s. 801.53. If a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, the adverse party may assert at the trial any defense in law or fact to that claim for relief. If on a motion asserting the defense described in (f) to dismiss for failure of the pleading to state a claim upon which relief can be granted, or on a motion asserting the defenses described in (h) or (i), matters outside of the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in s. 802.08, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by s. 802.08." Sec. 802.-06(2).

of the Village Police Committee. It is the respondent's contention that the Village Board had delegated to the Police Committee the authority to hear and determine disciplinary charges brought against the Chief of Police and any members of the force, and that this delegation could not be withdrawn by a Village Board review of Police Committee findings and sanctions. The respondent relies on provisions contained within ch. 24 of the village ordinances which delineates the powers and duties of the Police Committee. The appellant contends that the village has the power of removal by virtue of sec. 17.13 (1), Stats., which reads:

"Officers of towns, and of villages, school districts and vocational, technical and adult education districts may be removed as follows:

"(1) APPOINTIVE OFFICERS. Any appointive village, town, school district and vocational, technical and adult education district officer, by the officer or body that appointed him, at pleasure. Removal of any such officer by a body shall be by a majority vote of all the members thereof."

The appellant claims that the original power of removal under sec. 17.13 (1) gives the Village Board standing authority to review the determinations of inferior tribunals which have been delegated the power of removal. Judge Gramling's decision adhered to this position.

Judge Raskin also found that the Village Board had the authority to review the Police Committee determination not to fire the respondent, Starke. However, he did not rely on sec. 17.13 (1); rather, he took judicial notice of a village ordinance which reads:

"The Village Board may at any time remove or demote any employee or officer of the classified civil service for a reasonable cause upon dismissal, demotion or lay-off exceeding five working days. The Village Board shall give the employee or officer a written statement of the specific reasons for his dismissal, demotion or lay-

off and shall immediately file a copy thereof with the Civil Service Commission. If the employee desires, he may, within ten days, file a written appeal with the commission demanding a hearing upon such dismissal, demotion or lay-off. The commission upon receiving such notice of appeal shall set a date for a hearing no more than ten days after the date of the Board action. All parties shall be afforded an opportunity to be heard, if the commission after hearing the matter, shall determine if the charges are not suspect or reasonable, then this employee or officer shall be reinstated immediately and reimbursed for any pay he may have lost as a result of the board action." Sec. 7, Village Ordinances.

We find both judges to be in error, the authority they relied upon does not justify a Village Board review of Police Committee findings. First, while we perceive that both the statute relied upon by Judge Gramling, and the ordinance relied upon by Judge Raskin could permit the Village Board to remove the police chief, neither is applicable to this situation. Neither the statute or the ordinance truly addresses the problem of whether once the powers of removal have been delegated, is the right of review maintained without express authorization by statute or ordinance. The record does not contain any village ordinance which specifically reserves in the Village Board the right to review the determinations of the Police Committee.

Secondly, in the absence of contrary authority and after a thorough review of ch. 24 of the Pewaukee Village ordinances, which deals with the powers and duties of the Police Committee, we find sec. 17.13(1) does not empower the Village Board to review Police Committee findings and disciplinary sanctions. Ch. 24 mandates that the exclusive authority and control over the Police Department is vested in the Police Committee and the only

means of appealing a Police Committee determination is to the village Civil Service Commission. Further, that ch. 24 makes it clear that contrary to the powers vested by sec. 17.13(1), the Police Committee and not the Village Board is the appointing authority for the chief of police. The pertinent portions of ch. 24 of the Pewaukee Village Ordinances read as follows:

"24.01. **Police Committee**

"(1) Membership

"The Police Committee shall consist of five citizens of the Village, appointed by the Village President, subject to confirmation by the Village Board. The terms shall be for five (5) years with appointments staggered, so that after the initial appointment, no more than one term shall expire in any one year. A Village Trustee, elected by the Village Board each April, shall be a nonvoting member of the committee, and shall hold no office.

" . . .

"(2) Organization

"The Police Committee shall organize and adopt rules for its own government in accordance with this section.

" . . .

"(3) Powers and Duties

"The Police Committee shall have such powers as may be necessary to enable it to perform its functions and maintain an efficient Police Department and such powers shall include the following:

"(a) The committee shall appoint the Chief of Police, who shall hold such office during good behavior, subject to suspension or removal by the committee for cause; the Chief may within three days after such suspension or removal appeal to the Civil Service Commission for reinstatement.

"(b) To approve all appointments and promotions made by the Chief in the Police Department.

"(c) To approve all rules and regulations and amendments thereto, for the government, discipline, equipment and uniforms of the Police Department.

"(d) To hear and determine charges against the Chief or any police officer filed by the Chief, by a member of the Village Board, by the Village Board as a body, or by

any other person 21 years of age or over. Such charges shall be in writing and shall be filed with the chairman.

"(e) The Committee, after a fair and impartial hearing, shall, if the party under charge is found guilty, order any of the following actions taken; fine of not to exceed $25.00; loss of vacation days or suspension from duty without pay for not to exceed five (5) days; reduction in rank of office; discharge from service.

"(f) The Chief of Police, or any officer, may within three (3) days appeal any reduction in rank of office or discharge from service to the Civil Service Commission.

"(g) The Committee may reinstate, with or without pay, any police officer suspended by the Chief or the Committee.

"(4) Additional Powers and Duties

"The Police Committee shall have all additional powers and duties granted or assigned by the Village Board or by Village ordinances.

"(5) Members of the Police Department, at the date of adoption of this ordinance, are considered as having been appointed by the committee to the position held by them at the time of adoption."

"24.03 Chief of Police, Duties and Powers

" . . .

"(2) He shall obey all lawful orders of the Police Committee.

" . . .

"(4) He shall appoint police officers from a list supplied by the Civil Service Commission and subject to the approval of the Committee."

In addition to the above findings that ch. 24 of the Village ordinances provided the exclusive means for an appeal to the Civil Service Commission from Police Committee findings; and that the Village Board review and removal of Starke contravened this process and is therefore illegal, we find one further fact persuasive. Although the record indicates that the Village of Pewaukee has not yet reached the 5,000 population figure wherein a municipality is required to have a Police and Fire

Board of Commissioners, as dictated by sec. 61.65, Stats., we find ch. 24 nearly identical to that statutory provision. Just as the intent of sec. 61.65 is to free police departments of the politicalizing influences of city hall, we find a similar intent contained within ch. 24 of the Pewaukee ordinances. Police department efficiency and integrity depends upon its autonomy and freedom from political pressures. We find circumspect the Village Board's attempt to contravene this autonomy by "break of the day" meetings where there is an absence of the adversary process.

While we have already found grounds for reversal, we find it necessary to discuss the application of *State ex rel. Kuszewski v. Board of Fire and Police Commissioners,* 22 Wis.2d 19, 125 N.W. 334 (1963) to this case.

Judge Raskin relied on this authority in limiting the village to a suspension of Starke pending the disposition of criminal charges. Discharge was not an issue before the court at the time of the *Kuszewski* ruling. The officer involved was under criminal indictment when the Milwaukee Police Chief placed him under indefinite suspension without pay. The Fire and Police Commissioners affirmed this action. The supreme court affirmed the trial court in holding that Kuszewski could be indefinitely suspended, but modified the trial court's ruling and found that the police officer was entitled to a salary during the period of suspension. The court's rationale was that while suspension was necessary for public confidence in the police department, the withholding of salary was not. The city charter construed in *Kuszewski* provided that discharge or suspension were available remedies subject to the review of the Police and Fire Commission. The Chief of Police had chosen suspension. Thus, discharge was not an issue in the *Kuszewski* case and therefore that case cannot be read as endorsing the proposition that suspension with pay is the only

sanction that a municipality can impose on police officers under criminal indictment.

In the application of *Kuszewski* to this case, it is sufficient to recognize that had the Police Committee found Starke guilty of wrongdoing justifying discharge, their ordinances would have empowered the Committee to do so, subject to review by the Civil Service Commission.

For all of the above reasons, we remand this case to the circuit court for a determination of Starke's back pay damages, during the period of November 29, 1976 to July 6, 1978, less any offset. Although in the normal case of a wrongful discharge, the remand would be to the Civil Service Commission, sec. 24.01(3) prevents this action as there is no appeal provided for a Police Committee finding which does not result in discharge or suspension. The illegal intervention of the Village Board in discharging Starke does not make this section applicable once the Police Committee had chosen not to discharge or suspend Starke.

*By the Court.*—The order is reversed and remanded for proceedings consistent with this decision.

CALLOW, J., took no part.