COURT OF APPEALS
DECISION
DATED AND FILED

July 11, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2017AP1693**

Cir. Ct. No. **2013CV3897**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT IV**

---

ANTONIO SORIA,

PLAINTIFF-RESPONDENT-CROSS-APPELLANT,

V.

CLASSIC CUSTOM HOMES OF WAUNAKEE, INC.,

DEFENDANT-APPELLANT-CROSS-RESPONDENT.

---

APPEAL and CROSS-APPEAL from orders of the circuit court for Dane County: RHONDA L. LANFORD, Judge. *Affirmed in part; reversed in part and cause remanded for further proceedings*.

Before Lundsten, P.J., Blanchard and Fitzpatrick, JJ.

¶1 FITZPATRICK, J. This case arises out of a dispute between Antonio Soria and Classic Custom Homes of Waunakee, Inc. (Custom Homes) about Custom Homes' refusal to pay Soria for amounts purportedly due on three

house painting contracts. Soria sued Custom Homes in the Dane County Circuit Court, and a jury found that, because of Custom Homes' refusal to pay Soria: Custom Homes breached its contracts with Soria; Custom Homes was unjustly enriched; and Custom Homes committed theft by contractor in violation of WIS. STAT. § 779.02(5) (2017-18).[1]

¶2 Custom Homes appeals the circuit court's order that vacated a previous order. The earlier order dismissed each of Soria's causes of action that concerned one of the painting contracts. The dismissal was based on an alleged accord and satisfaction between Soria and Custom Homes. We affirm the circuit court's order vacating the previous order because the vacated order improperly infringed on Soria's right to a jury trial on the accord and satisfaction issue. Custom Homes also appeals an order of the circuit court that denied Custom Homes' postverdict motion to change the jury's answers to special verdict questions concerning one element of Soria's theft by contractor claims. Custom Homes contends that Soria failed to present any credible evidence that its failure to pay Soria was without the consent of the owners of the land, which is an element of a theft by contractor claim. We conclude that the record contains no credible evidence to support the jury's answers concerning the consent of the owner element. As a result, we reverse the circuit court's order denying Custom Homes' request to change the answers to those special verdict questions. Soria also requests an order for the payment of his attorney fees for defending against Custom Homes' appeal because, according to Soria, Custom Homes' entire appeal is frivolous. We deny Soria's motion.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

2

¶3 Soria cross-appeals orders of the circuit court denying his motions for: pre-judgment interest and double statutory costs pursuant to WIS. STAT. § 807.01(3); pre-judgment interest pursuant to WIS. STAT. § 138.04; and for the payment, pursuant to WIS. STAT. § 804.12(3), of some of Soria's attorney fees incurred in this action. We reverse the circuit court's decision regarding pre-judgment interest requested pursuant to § 138.04, but otherwise affirm the circuit court's decisions on the remaining issues raised in Soria's cross-appeal.

¶4 Therefore, we affirm in part, reverse in part and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶5 The following facts are not in dispute in light of the portions of the jury verdict that are not appealed.[2]

¶6 Custom Homes is a homebuilder located in Waunakee, Wisconsin. Soria is a professional house painter. Custom Homes entered into three contracts for the construction of homes with three sets of owners who we will refer to as Powell-Long, Duffrin-Sanders, and Justl-Miller. Custom Homes and Soria entered into contracts for Soria to perform painting and drywalling at those three homes.

¶7 As to each home, the following chart shows the amounts that Custom Homes agreed to pay, and actually paid, to Soria:

---

[2] Custom Homes did not request that the circuit court change the jury's answers to the special verdict questions concerning Soria's breach of contract claim, his unjust enrichment claim, or Custom Homes' counterclaims, and Custom Homes does not raise any issue regarding the jury's answers to those questions on appeal.

| Home | Agreed Payment | Payment | Deficiency |
|---|---|---|---|
| Powell-Long | $6,940 | $6,440 | $500 |
| Duffrin-Sanders | $8,735 | $3,200 | $5,535 |
| Justl-Miller | $8,550 | $5,000 | $3,550 |
| | | total: | $9,585 |

¶8    Custom Homes received, from the owners or the owners' lenders, all amounts that were owed for the construction of the three homes. Custom Homes used amounts paid by each homeowner or lender, up to the contract price, to pay in full amounts owed to all subcontractors and suppliers of materials for construction of the homes, other than Soria.

¶9    Soria initiated this action against Custom Homes alleging that, because of Custom Homes' failure to pay amounts due to Soria: Custom Homes had breached its contracts with Soria; Custom Homes was unjustly enriched by Soria's labor at each home; and Custom Homes committed theft by contractor in violation of WIS. STAT. § 779.02(5). Custom Homes stated various counterclaims against Soria. In addition, Custom Homes asserted as a defense to Soria's causes of action regarding the Justl-Miller home that there was an accord and satisfaction which extinguished Soria's claims for his labor at that home.

¶10    Based on the purported accord and satisfaction, Custom Homes filed a motion to dismiss Soria's causes of action that related to Soria's work at the Justl-Miller home. The circuit court found that there was an accord and satisfaction and dismissed each of Soria's claims regarding Soria's work at the Justl-Miller home. The circuit judge originally assigned to this case (Judge John Albert) retired, and the case was assigned to a successor circuit judge (Judge Rhonda Lanford). Soria filed a motion for relief from Judge Albert's order

4

regarding the accord and satisfaction. Judge Lanford granted the motion for relief and reinstated Soria's claims regarding Soria's work at the Justl-Miller home.

¶11 The case then proceeded to a jury trial. At the close of Soria's evidence, and again at the close of all evidence, Custom Homes moved for dismissal of Soria's theft by contractor claim on the ground of insufficiency of the evidence. *See* WIS. STAT. § 805.14(3), (4). The circuit court denied Custom Homes' motions, and each of Soria's claims were submitted to the jury. The jury returned a special verdict in favor of Soria on each of his claims of breach of contract, unjust enrichment, and theft by contractor. On each of the breach of contract, unjust enrichment, and theft by contractor causes of action, the jury found that Custom Homes owed Soria the amount Soria alleged he was due, a total of $9,585.00, for work on the three homes. In addition, the jury awarded Soria $28,755.00 as exemplary damages based on the theft by contractor claim. The jury also found in favor of Soria on all of Custom Homes' counterclaims and Custom Homes' accord and satisfaction affirmative defense concerning Soria's claims for his work at the Justl-Miller home.

¶12 Post-trial, Custom Homes filed a motion to change the jury's answers to some special verdict questions concerning Soria's theft by contractor cause of action. *See* WIS. STAT. § 805.14(5)(c). The circuit court denied Custom Homes' motion.

¶13 Also post-trial, and material to this appeal, Soria filed motions requesting: prejudgment interest and double statutory costs pursuant to WIS. STAT. § 807.01(3); pre-judgment interest pursuant to WIS. STAT. § 138.04; and payment of some of his attorney fees, pursuant to WIS. STAT. § 804.12(3), because

Custom Homes did not admit certain requests to admit propounded by Soria. The circuit court denied each of Soria's post-verdict motions.

¶14 Custom Homes appeals, and Soria cross-appeals. We refer to additional material facts in the following discussion.

## DISCUSSION

¶15 We begin with the issues presented in Custom Homes' appeal.

## I. The Circuit Court Properly Exercised Its Discretion in Granting Soria's Motion for Relief from the Order Dismissing the Justl-Miller Claims.

¶16 Custom Homes argues that Soria's claims which concerned Soria's work at the Justl-Miller home should not have been submitted to the jury because Judge Lanford erred in granting Soria's motion for relief from Judge Albert's order regarding the purported accord and satisfaction.[3] We conclude that Judge Lanford properly exercised her discretion in granting Soria's motion for relief.

## A. Facts.

¶17 The following facts material to this issue are not in dispute.

¶18 After Soria finished his work at the Justl-Miller home, Custom Homes tendered to Soria a check for $5,000.00. The check contained an endorsement stating that Soria acknowledged payment in full and waived future

---

[3] A resolution of this issue makes a difference to the result because a binding accord and satisfaction regarding Soria's work at the Justl-Miller home would extinguish his causes of action of breach of contract, unjust enrichment, and theft by contractor to the extent those causes of action concern Soria's claim for $3,550.00 of damages for his work at the Justl-Miller home.

claims against Custom Homes regarding his work at the Justl-Miller home by accepting the $5,000.00 amount. Soria signed and cashed the check. In its answer, Custom Homes asserted that Soria's acceptance of the payment was an accord and satisfaction that had the effect of extinguishing Soria's causes of action regarding Soria's work on the Justl-Miller home.

¶19 Custom Homes filed a motion to dismiss Soria's claims regarding Soria's work at the Justl-Miller home based on the purported accord and satisfaction. Judge Albert held three evidentiary hearings on that motion. Following those hearings, Judge Albert made factual findings and credibility determinations and concluded that Soria's cashing of the check tendered by Custom Homes constituted an accord and satisfaction with regard to Soria's labor on the Justl-Miller home. Judge Albert then dismissed each of Soria's claims against Custom Homes regarding the Justl-Miller home.

¶20 After Judge Albert's retirement, the circuit court, now with Judge Lanford presiding, granted Soria's motion for relief from Judge Albert's order.

¶21 Judge Lanford explained the basis for her discretionary determination to grant Soria's motion:

> I reviewed this file in its entirety. I reviewed the transcript on this motion …. What occurred at the motion stage regarding this matter is, by definition, a trial of the evidence. That's what happened in this hearing.
>
> The findings were evidentiary findings, and frankly hinged on whether Mr. Soria is credible, which is, by definition, a job of the finder of fact…. It's up to the finder of fact to determine whether a witness is credible, whether a party is credible based on the instructions the Court gives to the finder of fact in making that determination. This was a court trial on [the] Justl-Miller [claim] because there were clearly issues of material fact. I did not see anything which would indicate a waiver of the right to jury trial….

> … I do find that a manifest error of law occurred in dismissing this claim. The dismissal was based on factual determinations that should have been decided by a jury. And I am therefore granting the motion ….

### B. Circuit Court's Inherent Authority.

¶22 In this court, the parties discuss only the applicability of WIS. STAT. § 806.07(1) in these circumstances. However, our own research leads to the conclusion that Judge Lanford had the inherent authority to amend Judge Albert's ruling regardless of the applicability of § 806.07(1). In *Teff v. Unity Health Plans Ins. Corp.*, 2003 WI App 115, 265 Wis. 2d 703, 666 N.W.2d 38, this court held: "A court has the inherent authority to reconsider a nonfinal ruling any time prior to the entry of the final order or judgment." *Teff*, 265 Wis. 2d 703, ¶57 (citing *Fritsche v. Ford Motor Credit Co.*, 171 Wis. 2d 280, 293-94, 491 N.W.2d 119 (Ct. App. 1992). Whether a circuit court acted within its common law authority presents a question of law which we review de novo. *Id.*, ¶56.

¶23 A final order or judgment is one that "disposes of the entire matter in litigation." *See* WIS. STAT. § 808.03(1). Custom Homes does not explain why Judge Albert's order concerning the accord and satisfaction was a final order or judgment. We conclude that Judge Albert's order was a non-final order, and Judge Lanford had the inherent authority to vacate Judge Albert's order.

¶24 Because the parties analyze this issue as an application of WIS. STAT. § 806.07(1), we now consider those arguments of the parties related to that statute. We affirm Judge Lanford's order vacating Judge Albert's order whether this issue is analyzed as Judge Lanford exercising the circuit court's inherent authority or exercising the circuit court's authority pursuant to § 806.07(1).

## C. Applicable Authorities and Standard of Review for
## WIS. STAT. § 806.07(1).

¶25　WISCONSIN STAT. § 806.07(1) enumerates several circumstances in which a circuit court may relieve a party from an order.  Sec. 806.07(1)(a)-(h).  Of importance to our analysis, a circuit court may relieve a party from an order for "[a]ny other reasons justifying relief from the operation of the judgment."  Sec. 806.07(1)(h).  The Wisconsin Supreme Court has held that § 806.07(1)(h) provides the circuit court authority to grant relief "where error in law or fact is recognized to exist." *Starke v. Village of Pewaukee*, 85 Wis. 2d 272, 285, 270 N.W.2d 219 (1978).

¶26　We review a circuit court's decision to grant relief from an order under WIS. STAT. § 806.07(1)(h) under the erroneous exercise of discretion standard.  *Miller v. Hanover Ins. Co.*, 2010 WI 75, ¶29, 326 Wis. 2d 640, 785 N.W.2d 493.  A circuit court properly exercises its discretion if its decision is based on the facts of record and on the application of a correct legal standard.  *Id.* "'We will not reverse a discretionary determination by the [circuit] court if the record shows that discretion was in fact exercised and we can perceive a

reasonable basis for the court's decision.'" *Id.*, ¶30 (quoting *Sukala v. Heritage Mut. Ins. Co.*, 2005 WI 83, ¶8, 282 Wis. 2d 46, 698 N.W.2d 610).[4]

## D. Analysis.

¶27     We conclude that Judge Lanford properly exercised her discretion in granting Soria's motion.  As Judge Lanford explained, Judge Albert erred by deciding a motion to dismiss by hearing testimony and resolving issues of fact regarding the asserted accord and satisfaction.  Methodology to decide a motion to dismiss does not allow a circuit court to determine the credibility of witnesses and make factual findings.  *See Kohlbeck v. Reliance Const. Co.*, 2002 WI App 142, ¶9, 256 Wis. 2d 235, 647 N.W.2d 277.  Accordingly, Judge Albert erred by resolving disputed factual issues that should have been decided by a jury.  Judge Lanford's conclusion that Judge Albert's dismissal of Soria's Justl-Miller claims was premised upon an error of law provided a reasonable basis for granting relief pursuant to WIS. STAT. § 806.07(1)(h).  *See Starke*, 85 Wis. 2d at 285.

---

[4] The parties dispute whether Soria was required to show "extraordinary circumstances justifying relief in the interest of justice" before the circuit court could grant Soria relief under WIS. STAT. 806.07(1)(h).  The Wisconsin Supreme Court has held that, when a party seeks relief under paragraph (1)(h) "alleging factors arguably within [subsections] (a), (b), or (c)," the party must "also allege[] extraordinary circumstances."  *See State ex rel. M.L.B. v. D.G.H.*, 122 Wis. 2d 536, 545-46 & 49, 363 N.W.2d 419 (1985) ("To allow relief for cases which may support a claim under subsections (1), (2), or (3) without abrogating the one-year time limitation, the federal courts have developed the 'extraordinary circumstances' test.").  The supreme court has further held that a showing of "extraordinary circumstances" is required when a party invokes paragraph (1)(h) "to address intervening changes in the law," *Sukala v. Heritage Mut. Ins. Co.*, 2005 WI 83, ¶12, 282 Wis. 2d 46, 698 N.W.2d 610, and, additionally, when a party invokes (1)(h) to seek relief from a default judgment. *Miller v. Hanover Ins. Co.*, 2010 WI 75, ¶¶31, 35, 326 Wis. 2d 640, 785 N.W.2d 493.  However, the supreme court has not clearly addressed whether "extraordinary circumstances" are required when a party invokes paragraph (1)(h) to address a circuit court's dismissal of a claim based on the application of an incorrect legal standard.  Because the supreme court has not squarely answered this question, and because the resolution of this question would not change our conclusion that Judge Lanford properly exercised her discretion, we do not resolve it.

¶28 Custom Homes makes a number of arguments to the contrary, and we reject each. At the outset, we observe that Custom Homes generally frames its argument not in terms of any alleged erroneous exercise of discretion but, rather, in terms of Judge Lanford's *authority* to overturn her predecessor's prior ruling.

¶29 First, Custom Homes contends that Judge Lanford "improperly acted as a de facto appellate court" by granting relief from Judge Albert's order. This argument fails because "[i]t is well established that a successor judge in a circuit court proceeding has the authority to modify or reverse decisions, judgments or rulings of a predecessor judge, so long as the predecessor judge was empowered to make such modifications." *Dietrich v. Elliott*, 190 Wis. 2d 816, 822, 528 N.W.2d 17 (Ct. App. 1995).

¶30 In *Dietrich*, the defendant filed a motion to dismiss, arguing that the circuit court lacked personal jurisdiction. *Id.* at 820. The predecessor judge twice denied the defendant's motion to dismiss based on a lack of personal jurisdiction. *Id.* at 821. The case was reassigned to another circuit judge. *Id.* That successor judge reconsidered the predecessor judge's prior rulings and granted the motion to dismiss. *Id.* at 821-22. Relying on WIS. STAT. § 806.07(1)(h), this court rejected the plaintiff's argument that the successor judge lacked the authority to review the prior rulings:

> Therefore, just as [the predecessor judge] had the discretionary authority to reconsider his [or her] prior rulings regarding personal jurisdiction, so also did [the successor judge] when judicial control over this case was later assigned to him [or her].

*Id.* at 822-23. Custom Homes does not dispute that Judge Albert would have been authorized to address Soria's motion for relief from the order dismissing the Justl-

Miller claims. Therefore, it follows that Judge Lanford had that same authority after she was assigned to the case.

¶31 Second, Custom Homes argues that the "law of the case" doctrine bars Judge Lanford from granting relief from Judge Albert's order. "The issue of whether a decision establishes the law of the case raises a question of law that we review de novo." *State v. Stuart*, 2003 WI 73, ¶20, 262 Wis. 2d 620, 664 N.W.2d 82. We reject Custom Homes' argument because "[t]he law of the case doctrine is a 'longstanding rule that a decision on a legal issue *by an appellate court* establishes the law of the case, which must be followed in all subsequent proceedings in the trial court or on later appeal.'" *Id.*, ¶23 (quoting *Univest Corp. v. General Split Corp.*, 148 Wis. 2d 29, 38, 435 N.W.2d 234 (1989)) (emphasis added). While the law of the case doctrine requires a circuit court on remand to follow an appellate court's decisions, it does not prevent a circuit court from reconsidering its previous rulings. Nor does it prevent a successor circuit court judge from reconsidering the previous rulings of a predecessor circuit court judge, as Judge Lanford did here.

¶32 Finally, Custom Homes contends that we should reverse Judge Lanford's order because Judge Lanford heard no testimony regarding the alleged accord and satisfaction whereas Judge Albert presided over a number of "evidentiary hearings" regarding that issue. However, as pointed out earlier, Judge Lanford properly granted relief to Soria because Judge Albert weighed disputed testimony about the asserted accord and satisfaction when those disputed factual issues should have been decided by a jury. Accordingly, Custom Homes'

argument that Judge Albert was best positioned to assess and weigh the evidence concerning the Justl-Miller claims goes nowhere.[5]

¶33 For those reasons, we reject Custom Homes' contention that Judge Lanford erred by granting relief from Judge Albert's order, and we affirm Judge Lanford's decision. We now turn to Custom Homes' argument that there is no credible evidence to sustain the jury's verdict regarding a necessary element of Soria's civil theft by contractor claim.

## II. There Is No Credible Evidence to Sustain the Jury's Verdict That Custom Homes Committed Theft by Contractor.

¶34 For each of the three homes, the jury found that Custom Homes' failure to pay all amounts due to Soria was done without the consent of the owners of the land, one of the elements of a theft by contractor claim that must be proved by a plaintiff such as Soria. Custom Homes argues that Soria failed to present any credible evidence that the owners of the land did not consent to Custom Homes' failure to pay Soria the amounts he claims in this lawsuit.[6]

---

[5] In its reply brief, Custom Homes raises for the first time in this court the argument that the circuit court erred because it failed to consider that Soria had, by his conduct, waived his right to a trial by jury and agreed to a bench trial on the accord and satisfaction issue. We do not consider this argument because we see no good reason to entertain this late argument. *See Roy v. St. Lukes Med. Ctr.*, 2007 WI App 218, ¶30 n.6, 305 Wis. 2d 658, 741 N.W.2d 256 (we generally do not consider arguments raised for the first time in a party's reply brief).

[6] A resolution of this issue makes a difference to the result because dismissal of the theft by contractor cause of action regarding all three homes will mean Soria will not have a judgment for the $28,755.00 exemplary damages awarded by the jury, and Soria will not have grounds to request the payment of his attorney fees and "[a]ll costs of investigation and litigation" pursuant to WIS. STAT. § 895.446(3)(b). *See Estate of Miller v. Storey*, 2017 WI 99, ¶6, 378 Wis. 2d 358, 903 N.W.2d 759.

## A. Standard of Review.

¶35    On review of a motion to change a jury's answer to a special verdict question, this court affirms the jury's answer if it is supported by any credible evidence. *Kubichek v. Kotecki*, 2011 WI App 32, ¶14, 332 Wis. 2d 522, 796 N.W.2d 858; WIS. STAT. § 805.14(1). We view the evidence in the light most favorable to the jury's determination, and we search the record for credible evidence that sustains the jury's answer. *Kubichek*, 332 Wis. 2d 522, ¶14; § 805.14(1). In cases where, as here, the circuit court upheld the jury's findings on postverdict motions, the standard of review "is even more stringent," and this court will not overturn the verdict unless "there is such a complete failure of proof that the verdict must be based on speculation." *Kubichek*, 332 Wis. 2d 522, ¶14 (quoting *Coryell v. Conn*, 88 Wis. 2d 310, 315, 276 N.W.2d 723 (1979)). On the other hand, if there is no evidence to support any part of a verdict, then either the circuit court or an appellate court can change the jury's answers. *Lueck v. City of Janesville*, 57 Wis. 2d 254, 262, 204 N.W.2d 6 (1973) ("Conversely it can be said if there is not such evidence either court can change the answer as a matter of law.").

¶36    We conclude that there is no credible evidence to sustain the jury's answers to the special verdict questions concerning the consent of the owner element, and we reverse the circuit court's order that denied Custom Homes' motion to change those answers.[7]

---

[7] Our conclusion that the record contains no credible evidence regarding the consent of the owners is dispositive of Soria's theft by contractor cause of action, and we do not address the other theft by contractor issues raised by the parties, such as whether there was a bona fide dispute. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (appellate court need not address every issue raised by the parties when one issue is dispositive).

¶37     We begin by considering the elements of the theft by contractor cause of action as set forth in WIS. STAT. § 779.02(5).

### B. Theft by Contractor.

¶38     Wisconsin's civil theft by contractor statute, WIS. STAT. § 779.02(5),[8] "safeguards against misappropriation of construction project funds" by providing that funds paid to a contractor by a property owner for improvements to that property constitute a trust for the benefit of owners, subcontractors, and suppliers of materials. Sec. 779.02(5); *State v. Keyes*, 2008 WI 54, ¶21, 309 Wis. 2d 516, 750 N.W.2d 30; *Tri-Tech Corp. of Am. v. Americomp Servs., Inc.*, 2002 WI 88, ¶23, 254 Wis. 2d 418, 646 N.W.2d 822. The purpose of the statute is to protect owners and prime contractors from having to pay twice and to secure to subcontractors and suppliers payment for work and materials. *Keyes*, 309 Wis. 2d

---

[8] WISCONSIN STAT. § 779.02(5) provides in pertinent part:

> (5) Theft by contractors. The proceeds of any mortgage on land paid to any prime contractor or any subcontractor for improvements upon the mortgaged premises, and all moneys paid to any prime contractor or subcontractor by any owner for improvements, constitute a trust fund only in the hands of the prime contractor or subcontractor to the amount of all claims due or to become due or owing from the prime contractor or subcontractor for labor, services, materials, plans, and specifications used for the improvements, until all the claims have been paid, and shall not be a trust fund in the hands of any other person. The use of any such moneys by any prime contractor or subcontractor for any other purpose until all claims, except those which are the subject of a bona fide dispute and then only to the extent of the amount actually in dispute, have been paid in full or proportionally in cases of a deficiency, is theft by the prime contractor or subcontractor of moneys so misappropriated and is punishable under s. 943.20.

516, ¶29; *see also* **Kraemer Bros. v. Pulaski State Bank**, 138 Wis. 2d 395, 402, 406 N.W.2d 379 (1987).

¶39     To prove his civil theft by contractor claim, Soria was required to establish the following elements by a preponderance of the evidence:  (1) Custom Homes entered into an agreement for the improvement of land; (2) Custom Homes received money for the improvement of land from the owner or a mortgagee; (3) Custom Homes intentionally used part or all of the money for purposes other than the payment of bona fide claims due or to become due for labor or materials used in the improvements prior to the payment of such claims; (4) Custom Homes' use of the money was without the consent of the owner of the land and contrary to Custom Homes' authority; and (5) Soria suffered a monetary loss as a result of Custom Homes' use of the money.  *See* WIS JI—CIVIL 2722.

**C.  There Is No Credible Evidence to Sustain the Jury's Answers to the Special Verdict Questions Concerning the Consent of the Owner Element.**

¶40     Focusing on the fourth element, the disputed special verdict questions required Soria to prove that Custom Homes' failure to pay Soria all amounts due was done without the consent of the owners of the land.  *See* WIS JI—CIVIL 2722.  Soria concedes that he carried the burden to prove that Custom Homes' failure to pay Soria was done without the consent of the owners of the land.  *See id.*

¶41     Soria first argues that he is an "owner" and, because he did not consent to Custom Homes' non-payment to him, that is evidence to support the jury's answer to the consent of the owner element.  Soria also argues in the alternative that, even if he does not prevail on his argument that he is an "owner," he "still presented evidence at trial from which the jury could infer that Custom

16

Homes did not receive consent from the owners of the homes to withhold … payment."

### 1. Soria Is Not an Owner of the Land.

¶42     We begin with Soria's argument that he satisfied the consent of the owner element because Soria himself is an "owner," and he did not consent to Custom Homes' non-payment for his labor.  For the following reasons, we reject Soria's contention.

¶43     The main problem with Soria's contention is that it is disconnected from the manner in which the circuit court instructed the jury in this case.  In the circuit court, Soria requested a jury instruction defining "owner" to include Soria.  The circuit court denied the request over Soria's objection, concluding that it could not "under any [tenet] of statutory construction read [into the theft by contractor statute] that a subcontractor is an owner of the land …."  Soria has not filed a cross-appeal concerning the circuit court's rejection of his proposed jury instruction.  Indeed, Soria makes no argument that the circuit court erred by rejecting that jury instruction.  Rather, it appears that Soria argues that there was credible evidence to support the jury's finding for the following reason:  although the jury was not instructed that a person in Soria's position can be considered an "owner," and Soria cites to no argument made to the jury that Soria was an "owner," the jury nonetheless accepted Soria's view that he is an "owner."  Soria's contention is untenable on its face and is reason enough to reject Soria's argument.

¶44     In addition, even if Soria made the argument on appeal that the circuit court erred in rejecting his jury instruction potentially denominating him as an "owner," we would affirm the circuit court's ruling.  The applicable jury instruction provides that a plaintiff, such as Soria, must establish that a defendant,

17

such as Custom Homes, received money for the improvement of land from *the owner or a mortgagee* and that the defendant's use of the money was without the consent of *the owner of the land*. *See* WIS JI—CIVIL 2722 (elements two and four of theft by contractor). Further, the jury instruction incorporates the definition of "owner" found in WIS. STAT. § 779.01(2)(c), which provides that "owner" "means the owner of any interest in land who … enters into a contract, express or implied, for the improvement of the land." *See* WIS JI—CIVIL 2722 n.3; *see also* § 779.01(2)(c). Soria does not argue, and the record does not demonstrate, that Soria owns any interest in the land on which the three homes were built or that he was a mortgagee of the landowners.

¶45 Further, Soria does not cite to any Wisconsin authority which has referred to a subcontractor such as Soria as an "owner" within the meaning of WIS. STAT. §§ 779.01(2)(c) and 779.02(5). Nor does Soria cite to any Wisconsin authority that has relied on the fact that a subcontractor did not consent to a use of monies by the general contractor as a basis to conclude the subcontractor was an "owner" as defined in §§ 779.01(2)(c) and 779.02(5).

¶46 Soria attempts to rely on language in *Tri-Tech* to support his interpretation of the term "owner" in this context. At the outset, we note that the dispute in *Tri-Tech* did not concern the consent of the owner element of theft by contractor. Rather, the dispute concerned whether the treble damages remedy under former WIS. STAT. § 895.80 (1999-2000) was available for civil theft by contractor, and, if so, whether it required proof of the elements of the criminal offense of theft by contractor under WIS. STAT. § 943.20(1)(b). *Tri-Tech*, 254 Wis. 2d 418, ¶¶1-2.

¶47    In *Tri-Tech*, the Wisconsin Supreme Court stated that "*[WIS. STAT. §] 943.20(1)(b)* makes it a crime for a trustee to intentionally use, transfer, conceal, or retain trust funds without the beneficiary's consent, contrary to the trustee's authority, and with intent to convert such funds to the trustee's own use or the use of another." *Id.*, ¶25 (emphasis added).  From a portion of that one sentence, Soria attempts a considerable leap.  Soria asserts that he is a "beneficiary" of the theft by contractor statute, *and* "a beneficiary is the person or 'owner' whose consent is relevant" in proving theft by contractor under WIS. STAT. § 779.02(5) *and*, therefore, Soria is an "owner" as defined in WIS. STAT. § 779.01(2)(c).  We do not accept Soria's contentions.  The supreme court in *Tri-Tech*, in the paragraph immediately following the language referred to by Soria, listed the elements of theft by contractor and explicitly used the words "owner" and "mortgagee," rather than "beneficiary."  *Id.*, ¶26.  Our supreme court would not have phrased the elements as it did in *Tri-Tech* if there was any basis for Soria's argument.

¶48    Accordingly, we reject Soria's contention that, because he was an "owner," there was credible evidence to sustain the jury's verdict on the consent of the owner element.

### 2. There Is No Credible Evidence to Sustain the Verdict Based on Any Inference Asserted by Soria.

¶49    We now turn to the question of whether, as Soria asserts, there is credible evidence to sustain the jury's answers to the special verdict questions concerning the consent of the owner element because the jury could "infer" that the owners did not give consent.  Soria makes a number of arguments, and we

reject each. We conclude that there is no credible evidence in the record to sustain the jury's answers to those special verdict questions.[9]

¶50    We repeat that Soria does not argue that there is direct evidence, as opposed to evidence merely raising an inference, in the record to support the contention that Custom Homes' decision not to pay Soria all amounts due was done without the consent of the owners. Instead, Soria contends only that the record includes evidence "from which the jury could *infer* that CCH did not receive consent." (Emphasis added.)

¶51    Soria first asserts that the jury could infer that the owners did not consent based on a specific term in the homebuilding contracts between Custom Homes and the three sets of landowners. Soria cites to a provision in each homebuilding contract which states that "[u]pon Substantial Completion, Buyer or Buyer's Lender shall pay to Builder the full Contract Price." However, Soria does not explain how this contract provision, which on its face merely governs payment to the builder upon "substantial completion" (a defined term in the contracts) of the work, leads to the conclusion that Custom Homes' decision not to pay Soria all amounts due was done without the consent of the owners. For that reason, we conclude this argument is undeveloped, and we do not consider it further. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals will not consider undeveloped arguments).

---

[9] In this court, Custom Homes cites to two letters from the owners of the Powell-Long and Justl-Miller homes purporting to have given Custom Homes consent to withhold payment to subcontractors as Custom Homes deemed appropriate. However, these letters were not part of the record considered by the jury, and our review does not consider facts not in evidence at trial.

¶52 Second, Soria argues that the homebuilding contracts "required Custom Homes to consult with the homeowners with respect to withholding payment from any subcontractor and using that money for purposes other than paying claims that were owed to the subcontractor." In support of this assertion, Soria cites to the homebuilding contracts between Custom Homes and the three sets of owners but does not cite to any specific contractual provision. In other words, Soria does not state where that language is in the contracts. We reject this argument because it fails to cite to the record in any meaningful way. *See State v. McMorris*, 2007 WI App 231, ¶30, 306 Wis. 2d 79, 742 N.W.2d 322 (court of appeals may choose not to consider arguments that lack proper citations to the record). Moreover, from our review of those contracts, we conclude that the homebuilding contracts do not contain any such provision.

¶53 Third, in support of his "inference" argument, Soria relies on the following language from the circuit court's decision concerning Custom Homes' motion to dismiss the theft by contractor claim because the consent of the owner element failed. The circuit court stated:

> One of the things a jury can do in this case is draw inferences from the facts presented. And a jury could, considering the credible evidence and reasonable inferences, conclude that the owners, *based on the contract language* and what the money was to be used for, did not consent to the money being used for a purpose other than paying for the contractors and other than the contract terms.

(Emphasis added.) We reject that analysis as a basis to conclude that the jury inferred that the owners did not consent. Notably, the circuit court did not cite to any specific contractual provision from which the jury could draw such an inference, and Soria does not make a viable argument in this court that any such provision is in the homebuilding contracts or can be inferred from those contracts.

Additionally, even if the contracts could be read as Soria asserts (and they cannot), the contractual language does not provide a basis to find that the owners of the land did or did not in fact consent to Custom Homes' withholding of money owed to Soria.

¶54 Soria next asserts that Custom Homes' "use of the trust funds to pay itself a profit and the non-payment of Mr. Soria was unlawful," meaning that "[t]he jury can … infer that CCH's unlawful use of the funds was done without consent." To the extent we understand this argument, we reject it because it is circular and assumes that Custom Homes' conduct violated WIS. STAT. § 779.02(5). In other words, Soria asserts that Custom Homes' conduct was "unlawful" because Soria starts with the premise that Custom Homes' conduct violated the theft by contractor statute.

¶55 Finally, Soria contends that the jury could infer a lack of consent "based on the absence of any evidence of affirmative consent by the homeowners …." Soria's argument presumes a lack of consent, and that it was Custom Homes' burden to prove the homeowners consented to Custom Homes' withholding of payments to Soria. But, Soria's assertions ignore the burden of proof on this element. As already noted, Soria concedes that the burden of proof on this element rested with him. Custom Homes was not required to provide any evidence that the homeowners consented, and this contention by Soria fails.

¶56 Accordingly, we reverse the order of the circuit court denying Custom Homes' motion to change the answers to the special verdict questions regarding the consent of the owners. Because Soria failed to meet his burden of proof on that element, we reverse the jury's verdict that Custom Homes violated WIS. STAT. § 779.02(5), and we remand this matter to the circuit court to dismiss

with prejudice Soria's theft by contractor claims and vacate the portions of the judgment relating to the theft by contractor claims.

### III. Custom Homes' Appeal Is Not Frivolous.

¶57     Soria requests that this court conclude that Custom Homes' appeal is frivolous.  WIS. STAT. RULE 809.25(3)(c)2.  RULE 809.25(3) directs this court to award reasonable attorney fees upon determining that an appeal is frivolous.  RULE 809.25(3).  To award reasonable attorney fees, this court must determine that the *entire* appeal is frivolous.  ***Larson v. Burmaster***, 2006 WI App 142, ¶45, 295 Wis. 2d 333, 720 N.W.2d 134.  As was just noted, Custom Homes is successful in its appeal on one issue.  Accordingly, it cannot be concluded that Custom Homes' entire appeal was frivolous, and we deny Soria's motion.

¶58     We now turn to Soria's cross-appeal.

### IV. Soria's Cross-Appeal.

¶59     In his cross-appeal, Soria argues that he made an unambiguous offer of settlement consistent with the requirements of WIS. STAT. § 807.01 and, pursuant to that statute and the jury's verdict, he is entitled to prejudgment interest and double statutory costs.  Soria also argues that he is entitled to prejudgment interest under WIS. STAT. § 138.04 because the amount due on his breach of contract claim was liquidated.  Soria additionally argues that the circuit court erroneously exercised its discretion when it denied an award of attorney fees

23

incurred by Soria in proving the truth of certain matters after Custom Homes denied requests for admission.[10]

## A. Soria's Settlement Offers Were Not Valid Offers of Settlement Under WIS. STAT. § 807.01.

¶60     Soria argues that he made at least one offer of settlement to Custom Homes that was a valid WIS. STAT. § 807.01(3) offer of settlement and that, because he recovered a more favorable judgment than the demand in the offer, he is entitled to pre-judgment interest and double statutory costs.  *See* § 807.01(3) and (4).  We conclude that Soria did not make a valid § 807.01(3) offer of settlement and affirm the circuit court's denial of Soria's request.

¶61     We now note, for context, authorities material to our analysis regarding offers of settlement under WIS. STAT. § 807.01(3).

¶62     Whether a settlement offer is valid as a statutory offer of settlement triggering the provisions of WIS. STAT. § 807.01(3) is a question of law we review de novo.  *See **DeWitt Ross & Stevens, S.C. v. Galaxy Gaming & Racing Ltd. P'ship***, 2004 WI 92, ¶19, 273 Wis. 2d 577, 682 N.W.2d 839.

¶63     WISCONSIN STAT. § 807.01(3), which governs offers of settlement made by the plaintiff to the defendant, provides in pertinent part:

---

[10] Our conclusion that Soria's theft by contractor claim fails has the following effect on an issue raised in the cross-appeal.  It renders moot the issue of whether Soria is entitled to "[a]ll costs of investigation and litigation," pursuant to WIS. STAT. § 895.446(3)(b), because that request is explicitly based on the success of the theft by contractor claim.  So, we do not discuss that issue.  *See **PRN Assocs. LLC v. DOA***, 2009 WI 53, ¶¶25, 29, 317 Wis. 2d 656, 766 N.W.2d 559 ("An issue is moot when its resolution will have no practical effect on the underlying controversy.").

> After issue is joined but at least 20 days before trial, the plaintiff may serve upon the defendant a written offer of settlement for the sum, or property, or to the effect therein specified, with costs…. If the offer of settlement is not accepted and the plaintiff recovers a more favorable judgment, the plaintiff shall recover double the amount of the taxable costs.

Sec. 807.01(3).

¶64   "WISCONSIN STAT. § 807.01 is a cost-shifting statute and therefore is a statute in derogation of the common law.  Statutes in derogation of the common law must be strictly construed." *Galaxy Gaming*, 273 Wis. 2d 577, ¶¶30-32.

¶65   The Wisconsin Supreme Court has held that statutory offers of settlement must be "absolutely unambiguous." *Id.*, ¶34.  To be unambiguous, "the offer must allow the defendant to fully and fairly evaluate his or her own exposure to liability." *Id.*  A defendant does not have a full and fair opportunity to evaluate the settlement if the defendant "must speculate about whether costs are separate from or included in the proposed offer." *Stahl v. Sentry Ins.*, 180 Wis. 2d 299, 308, 509 N.W.2d 320 (Ct. App. 1993).  When a plaintiff fails to state whether an offer includes the payment of the plaintiff's statutory costs, the offer is ambiguous and therefore invalid pursuant to WIS. STAT. § 807.01(3). *Id.*

¶66   In addition, WIS. STAT. § 807.01(3) does not allow a plaintiff to place a time limit in a valid offer of settlement.  The Wisconsin Supreme Court in *Galaxy Gaming* considered an offer of settlement demanding payment within 15 days of the offer. *Galaxy Gaming*, 273 Wis. 2d 577, ¶42.  Strictly construing the terms of § 807.01, the supreme court held that "there is nothing in the language of [] § 807.01 that authorizes conditions on payment like the 15-day payment provision here" and "the condition may not be imposed." *Id.*, ¶36.  Further, the supreme court held that "the test for whether a given provision may be included in

25

a valid settlement offer is … whether the provision specifies a remedy that could be imposed by the court." *Id.*, ¶42. Because the circuit court could not enter a judgment requiring the defendant to pay within 15 days, our supreme court concluded that the offer of settlement was not valid under § 807.01(3), and the plaintiff was not entitled to prejudgment interest and double costs under that statute. *Id.*

¶67    In light of those authorities, we now consider each of Soria's offers of settlement to Custom Homes.

¶68    In May 2015, counsel for Soria sent counsel for Custom Homes an email including the following pertinent language:  "[I]f Classic really does have $9600 in its account, I reiterate that my client's offer is that payment of $9600 would resolve this case today, without the need for further hearings, depositions, discovery, and trial."  The email did not state whether or not costs were included in the offer.  For that reason, we conclude that the offer was ambiguous and not valid under WIS. STAT. § 807.01(3).  *See Stahl*, 180 Wis. 2d at 308.

¶69    Again in May 2015, counsel for Soria sent counsel for Custom Homes an email stating in part:  "[I]f Classic has the disputed $9,585 in your trust account, please pass along to your client the offer that we can settle the case now for $9,735.  That would be the $9,585 [Soria] expected to be paid and $150 in interest for the last two years."  Again, the email did not indicate whether the demanded sum included costs.  We conclude that this email also was ambiguous and not a valid offer under WIS. STAT. § 807.01(3).  *See Stahl*, 180 Wis. 2d at 308.

¶70    In September 2015, counsel for Soria sent counsel for Custom Homes another email including the following language:

26

> [W]e are willing to dismiss and resolve the claims in this case in one of two ways. First, if we ever get clear accounting records which show that CCH did not violate the trust account, we would then be willing to dismiss the theft by contractor claims. Second, [] Soria is still willing to dismiss the action entirely, in exchange for payment of $9700 and his filing fee.

As with the two previously-discussed offers, the failure to specify whether the offer included or excluded statutory costs renders the offer ambiguous and invalid under WIS. STAT. § 807.01(3). *See* **Stahl**, 180 Wis. 2d at 308.

¶71 On September 9, 2016, counsel for Soria sent to counsel for Custom Homes a settlement offer which included the following pertinent language:

> In light of Judge Lanford's ruling [reversing the circuit court's prior decision dismissing the Justl-Miller claim], [] Soria proposes that the parties fully settle this case for the amount of $12,831.
>
> This figure accounts for the total amount claimed by [] Soria, ($9,585) interest ($1,390.15 at the statutory rate of 4.25%), and court costs, which include filing fees ($265.50), service fees ($66), mediator fees ($150), expert fees ($225), deposition fees ($573.90), statutory attorney fees ($500), and copy fees ($75). Please note that this is a firm offer, that all previously made offers are hereby retracted, and that this offer of settlement will expire on September 12, 2016 at 5 pm.
>
> ….
>
> If your client accepts this offer, please make a check payable to EJI Trust Account for $12,831, and *deliver it to our office … by September 12, 2016 at 5 pm* along with a signed copy of the enclosed stipulation to dismiss.

(Emphasis added.)[11]

---

[11] A similar offer was also sent on September 8, 2016. The September 9, 2016, offer of settlement retracted at least the September 8 offer, so we do not consider the offer of September 8, 2016.

27

¶72    We conclude that the September 9, 2016 letter was not a valid offer of settlement under WIS. STAT. § 807.01(3).  Soria demanded payment within three days of making the pertinent offer.  Thus, like the settlement offer in *Galaxy Gaming*, this settlement offer imposed a condition, a three-day time limit, which could not be imposed by the circuit court, thus rendering the offer invalid for purposes of § 807.01(3).  *See Galaxy Gaming*, 273 Wis. 2d 577, ¶42.

¶73    In sum, Soria did not make any valid offer of settlement under WIS. STAT. § 807.01(3), and we affirm the circuit court's order denial of prejudgment interest and double costs pursuant to § 807.01(3) and (4).

**B.  Pre-Judgment Interest.**

¶74    Soria next argues that the circuit court erred by failing to award prejudgment interest to him pursuant to WIS. STAT. § 138.04.  Soria contends that the damages on Soria's breach of contract claim, $9,585.00, which Custom Homes failed to pay to Soria for completing the three painting contracts, were readily ascertainable, or liquidated, prior to trial.  We conclude that Soria is entitled to prejudgment interest because Custom Homes' arguments on this issue are not developed and fail to cite to the record.

¶75    Whether a party is entitled to prejudgment interest is a question of law subject to de novo review.  *Teff*, 265 Wis. 2d 703, ¶42.  "Prejudgment interest may be awarded only if the amount of damages is ascertainable or determinable prior to judicial determination, i.e., where there is a reasonably certain standard of measurement when correctly applied one can ascertain the amount owed."  *Klug & Smith Co. v. Sommer*, 83 Wis. 2d 378, 384, 265 N.W.2d 269 (1978).  "One of the tests for determining whether the amount owing is ascertainable to the extent it

would place liability for prejudgment interest on the withholding party, is whether the claim represents a 'genuine dispute.'" *Id.* at 385.

¶76    Soria argues that the amount due on the breach of contract claim, $9,585.00, was always readily ascertainable.  Soria, in briefing in this court, gives detailed cites to the record to support his contention along with applicable case law.  In response, Custom Homes cites only to two authorities for the general proposition that prejudgment interest is available only when damages are liquidated.  Custom Homes then very briefly argues that "the amount in controversy was always disputed" because of the existence of various counterclaims and offsets.  More to the point, Custom Homes does not support its argument with any citations to the record.  *See McMorris*, 306 Wis. 2d 79, ¶30 (court of appeals "may choose not to consider arguments unsupported by references to legal authority, arguments that do not reflect any legal reasoning, and arguments that lack proper citations to the record.").

¶77    Custom Homes has failed to rebut the legal and factual analysis from Soria on this issue and failed to develop any cognizable argument on this issue.  Therefore, we conclude that Custom Homes has forfeited its opportunity to rebut Soria's request for pre-judgment interest.

¶78    Accordingly, we reverse the order of the circuit court denying Soria's prejudgment interest request, and the cause is remanded with directions to determine the amount of Soria's prejudgment interest based on the statutory rate and include that amount in the judgment.  *See* WIS. STAT. § 138.04.

### C. Custom Homes Had Reasonable Grounds to Deny Soria's Requests for Admission.

¶79    Finally, Soria asserts that the circuit court clearly erred in declining to impose sanctions against Custom Homes under WIS. STAT. § 804.12(3). Specifically, Soria contends that Custom Homes did not have reasonable grounds to deny certain requests for admission in three subject areas:  (1) that Soria completed the work at each of the three homes; (2) that Custom Homes accepted each of Soria's bids on the contracts; and (3) that Custom Homes paid Soria for custom color work on the Duffrin-Sanders home.  Soria further asserts that, because he had to prove each of those allegations at trial, Soria should be awarded attorney fees incurred proving those matters.

¶80    WISCONSIN STAT. § 804.12(3) provides in pertinent part:

> If a party fails to admit … the truth of any matter as requested under s. 804.11, and if the party requesting the admissions thereafter proves the genuineness of … the truth of the matter, the requesting party may apply to the court for an order requiring the other party to pay the requesting party the reasonable expenses incurred in the making of that proof, including reasonable attorney fees.  The court shall make the order unless it finds that … *the party failing to admit had reasonable ground to believe that he or she might prevail on the matter….*

Sec. 804.12(3) (emphasis added).

¶81    In reviewing the circuit court's determination, this court upholds the circuit court's factual findings unless those are clearly erroneous.  *See Michael A.P. by Ricciardi v. Solsrud*, 178 Wis. 2d 137, 148, 502 N.W.2d 918 (Ct. App. 1993).  Whether those facts require an award of attorney fees and costs is a question that this court reviews de novo.  *Id.*

30

¶82    Custom Homes argues that, in the words of WIS. STAT. § 804.12(3), it "had reasonable grounds to believe" that it "might prevail" on the matters for which Soria requested admissions.  We now consider each of the three subject matters advanced by Soria as a basis for awarding attorney fees.

¶83    Regarding Soria's requests to admit that Soria completed the work at each home, at trial witnesses testified that other painters were hired by Custom Homes to finish the allegedly uncompleted work of Soria.  In response on appeal, Soria contends that, because the jury found that there was "no bona fide dispute" between Soria and Custom Homes (one of the elements of the theft by contractor cause of action), Custom Homes did not have reasonable grounds to believe it might prevail on the question of whether Soria completed the work.  But, Soria's argument ignores the standard of WIS. STAT. § 804.12(3) that attorney fees are not assessed if a party in Custom Homes' position "had reasonable ground to believe" it "*might* prevail on the matter."  Sec. 804.12(3) (emphasis added).  We agree with the circuit court's finding that, because Custom Homes lost at trial on the bona fide dispute element, this does not, on its own, lead to the conclusion that Custom Homes had no reasonable ground to deny those requests for admission that Soria completed the work at all three homes.  We conclude that the circuit court was correct not to award attorney fees regarding those requests to admit regarding Soria's completion of the work.

¶84    We also conclude that Custom Homes also had reasonable ground to believe it might prevail on the question of the second area of the requests to admit, whether Custom Homes accepted Soria's bids.  At trial, evidence was presented that Custom Homes did not agree to Soria's written bids and that, instead, Custom Homes proposed amounts and work to which Soria agreed.  In Soria's reply brief in support of his cross-appeal, Soria does not dispute Custom Homes' factual

assertions regarding the trial record on this subject area. As a result, Soria has conceded those facts. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments are deemed conceded). Accordingly, we conclude there was a factual basis to support Custom Homes' position that it had not accepted Soria's bids, and Custom Homes had reasonable grounds to deny those requests to admit.

¶85　Regarding the third subject matter of the requests to admit, Soria asserts on appeal that he requested that Custom Homes admit it paid Soria for custom color work on the Duffrin-Sanders home. Soria has misstated the nature of the request in his briefing in this court. The request did not demand that Custom Homes admit that it *paid* Soria for custom color work at that home but, rather, Soria requested Custom Homes to admit that it had *accepted* Soria's bid for that custom color work. As discussed above, there was a factual basis for Custom Homes to deny that it had *accepted* Soria's bids. For that reason, we affirm the circuit court's denial of Soria's request for attorney fees in regard to this request to admit.

¶86　Soria also contends that, assuming Custom Homes had reasonable grounds to deny those requests for admission, Custom Homes nevertheless had a duty to supplement its responses. *See* WIS. STAT. § 804.01(5)(b). That portion of that statute states:

> A party is under a duty seasonably to amend a prior response if the party obtains information upon the basis of which 1. the party knows that the response was incorrect when made, or 2. the party knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

Sec. 804.01(5)(b). We reject Soria's argument because it is undeveloped. Soria does not explain what new information Custom Homes purportedly received that would have triggered Custom Homes' duty to supplement its previous discovery responses or withdraw its previous denials. Soria does not argue that Custom Homes failed to maintain the same factual and legal positions through the course of the trial and, as we have explained, there was evidence at trial which provided a factual basis for Custom Homes' positions even if the jury did not accept Custom Homes' contentions.

¶87 Accordingly, the circuit court properly declined to award attorney fees to Soria under WIS. STAT. § 804.12(3).[12]

## CONCLUSION

¶88 For the foregoing reasons, the orders of the circuit court are affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

*By the Court.*—Orders affirmed in part; reversed in part and cause remanded for further proceedings.

Not recommended for publication in the official reports.

---

[12] Soria contends that the circuit court abused its discretion in granting a partial stay of the judgment pending this appeal. Resolving this issue would have no practical effect on the controversy before us. Therefore, the issue is moot, and we have been provided with no good reason to address this moot issue. *PRN Assocs.*, 317 Wis. 2d 656, ¶¶25, 29.